☑ Original  ☐ D

CLERK'S OFFICE
A TRUE COPY
Apr 25, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>information associated with (414) 628-1540 ("Target Cell<br>Phone 1") and (414) 788-1366 ("Target Cell Phone 2"), which<br>are both stored at the premises controlled by T-Mobile, a<br>wireless telephone service provider | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No. **25-M-402 (SCD)** |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before   5-9-25     *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   Honorable Stephen C. Dries   .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   4-25-25    4:15 pm      _____
                                                       *Judge's signature*

City and state:   Milwaukee, Wisconsin          Honorable Stephen C. Dries, U.S. Magistrate Judge
                                                                  *Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**

**Property to Be Searched**

Records and information associated with the cellular telephone assigned call number **414-628-1540** and **414-788-1366** (referred to in attachment B as "the Accounts"), that is stored at the premises controlled by T-Mobile, a cellular service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey, 07054.

# ATTACHMENT B

## Particular Things to be Seized

**I.      Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Accounts listed in Attachment A for the following dates: December 1, 2024, 12:00 am CST, through April 16, 2025, 11:59 pm CST:

    A.    The following information about the customers or subscribers of the Accounts:

        1.    Names (including subscriber names, user names, and screen names);

        2.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        3.    Local and long-distance telephone connection records;

        4.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        5.    Length of service (including start date) and types of service utilized;

        6.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        7.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

        8.    Means and source of payment for such service (including any credit card or bank account number) and billing records.

B.     All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

    1.    the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

    2.    information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received, as well as per-call measurement data.

    3.    per call measurement and timing advance data (PCMD, RTT, True Call, NELOS, or similar)

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 18 U.S.C. § 1951(a), Hobbs Act Robbery, and Title 18 U.S.C. § 924(c), Brandishing of a Firearm during a Crime of Violence, involving SYKES, during the period of December 1, 2024, 12:00 am CST, through April 16, 2025, 11:59 pm CST.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider to locate the things particularly described in this Warrant.



CLERK'S OFFICE
A TRUE COPY
Apr 25, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

In the Matter of the Search of                    )
*(Briefly describe the property to be searched*   )
*or identify the person by name and address)*     )        Case No. **25-M-402 (SCD)**
information associated with (414) 628-1540 ("Target Cell Phone 1") and   )
(414) 788-1366 ("Target Cell Phone 2"), which are both stored at the    )
premises controlled by T-Mobile, a wireless telephone service provider  )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 1951(a) | Hobbs Act Robbery |
| 18 USC 924(c) | Brandishing a Firearm during a Crime of Violence |

The application is based on these facts:

Please see Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Heather Wright, Special Agent - FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date:  4-25-25

*Judge's signature*

City and state:  Milwaukee, Wisconsin          Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

<u>**AFFIDAVIT IN SUPPORT OF**</u>

<u>**AN APPLICATION FOR A SEACH WARRANT**</u>

I, Heather N. Wright, being first duly sworn on oath, on information and belief state:

**I.      INTRODUCTION, BACKGROUND, TRAINING, AND EXPERIENCE:**

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone's assigned call number:

a.   **(414) 628-1540** ("**Target Cell Phone 1**"), that is stored at the premises controlled by T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan way, Parsippany, New Jersey, 07054.

b.   **(414) 788-1366** ("**Target Cell Phone 2**"), that is stored at the premises controlled by T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan way, Parsippany, New Jersey, 07054.

2.      T-Mobile will be referred to as the "Service Provider" and "**Target Cell Phone 1**" and "**Target Cell Phone 2**" will collectively be referred to as the "**Target Cell Phones**". The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require the Service Provider to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

3.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since July of 2010. Since August of 2020, I have been assigned to the FBI's Milwaukee Area Violent Crimes Task Force, a multi-jurisdictional law enforcement entity charged with

investigating violations of federal law, including bank robberies, commercial robberies, armed motor vehicle robberies, and other violent crime matters, defined under Title 18 of the United States Code. I have participated in the investigation of numerous violent crimes, including armed bank robberies, armed motor vehicle robberies, and armed commercial robbery investigations in violation of Title 18, United States Code, Sections 924(c), 1951, 1956, 1957, 2113, and 2, and other related offenses. I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have participated in criminal investigations, surveillance, search warrants, cellular telephone extractions, interviews, DNA collection, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities.

4.      Based upon my training and experience, I know that criminal investigations have been aided by subpoenas, warrants, and court orders related to electronic communication records by providing critical investigative leads and corroborative evidence.

5.      To this end, based upon my training and experience, I know that individuals involved in violent crimes use cellular telephones to maintain contact with co-conspirators orally or via electronic message in "text" format. I also know that it is common for suspects who commit violent crimes to take, or cause to be taken, photographs and other visual depictions of themselves, their associates, and the illegal proceeds and firearms that they control or possess.

6.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other Agents, law enforcement personnel, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

2

7.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that RAYSHON SYKES (DOB XX/XX/1999) committed an armed robbery of a Dollar General located in Milwaukee, Wisconsin, on December 23, 2024, in violation of Title 18, United States Code, Sections 1951(a) (Hobbs Act robbery) and 924(c) (use and brandishing of a firearm during a crime of violence), that SYKES committed an armed robbery of a GameStop in Milwaukee, Wisconsin, on April 8, 2025, in violation of Title 18, United States Code, Sections 1951(a) (Hobbs Act robbery) and 924(c) (use and brandishing of a firearm during a crime of violence) and that SYKES and an unknown actor committed an armed robbery of the same GameStop on April 13, 2025, in violation of Title 18, United States Code, Sections 1951(a) (Hobbs Act robbery) and 924(c) (use and brandishing of a firearm during a crime of violence). I further submit that there is probable cause to believe that evidence of SYKES's involvement in the robberies will be recovered in the records that are sought herein.

II.     **PROBABLE CAUSE**

8.     I am investigating a series of armed robberies of businesses in Milwaukee, Wisconsin, that occurred between December 23, 2024, and April 13, 2025. The businesses referenced in this affidavit are businesses that are involved in interstate commerce, and the below-described robberies affected interstate commerce.

**Armed Robbery of the Dollar General Store located at 627 W. Historic Mitchell Street, Milwaukee, Wisconsin – December 23, 2024**

9.     On December 23, 2024, at approximately 8:57 a.m. CST, an armed robbery occurred at the Dollar General Store located at 627 W. Historic Mitchell Avenue, Milwaukee, Wisconsin. The victim, hereinafter M.P., stated that he was outside, salting the snow on the

sidewalk, just before the store was to open for the day. M.P. stated that he took note of an individual standing on the sidewalk as he was returning back to the store. M.P. stated that the suspect entered the store behind him and walked down an aisle away from the register counter. M.P. stated that he was near the register counter when the subject came from the aisle and walked towards the register with a gun pointed at him and his coworker, hereinafter K.H.

10.     M.P. stated that he was ordered by the suspect to lock the front doors and then ordered to grab a plastic bag and unlock the cigarette case. M.P. stated that he complied with the suspect's request as the suspect ordered K.H. to open the safe.  M.P. stated that the suspect was getting antsy because the K.H. could not get the safe open. M.P. stated that M.P. then opened the safe and both M.P. and K.H. backed away from the suspect while the subject proceeded to empty the contents of the safe into the bag provided, before fleeing the business.

11.     The subject was described as a black male with a dark complexion, approximately 20-25 years old, 5'7" in height, 140 pounds, skinny build, wearing a black mask, black hoodie, black pants, and armed with a black handgun, with some silver, and an extended magazine.

12.     Video surveillance of the incident was recovered by law enforcement from the Dollar General. Upon review, I observed, at 08:57:14, the suspect enters the business with both hands in his pockets, wearing a black face covering, a black hooded jacket, black pants, and gray shoes. The suspect exits out of view, and at approximately 08:57:34, approaches the two Dollar General employees with a black handgun with an extended magazine. The video corroborates M.P.'s timeline of events and during the robbery, the suspect's handgun can clearly be seen, during which, the suspect places the firearm onto the ground while placing the contents of the safe into the yellow plastic bag. At 08:59:05, the suspect is observed exiting the business on foot.

13.     A canvas for surveillance video was conducted and a video was recovered near the Dollar General that shows the suspect, in dark clothing, running Northbound through the alley across the street from Dollar General and immediately turn westbound in the T-alley towards 7th Street. The suspect is observed getting into a dark colored Nissan SUV, which then pulls out onto S. 7th Street from the same alley and turns northbound ono the 1600 block of S. 7th Street at 09:00:24.

**Armed Robbery of GameStop located at 4131 N. 56th Street, Milwaukee, Wisconsin – April 8, 2025**

14.     On April 8, 2025, at approximately 5:32 p.m., an armed robbery occurred at the GameStop located at 4131 N. 56th Street, Milwaukee, Wisconsin. The victim, hereinafter J.B., was an employee of the GameStop and stated that he arrived at work just prior to, his coworker's, hereinafter R.R., shift ending at 5:30 PM. J.B. stated that he and R.R. spoke for a few minutes when a black, male, wearing a dark blue leather jacket, black adidas joggers with white stripes going down the out seam and white and Navy blue Nike Air Jordan 11s, entered the business. J.B. stated this subject was approximately 5'09" and had a black hoody on under the jacket with the hood up, and wearing a black ski mask, J.B. also stated that the subject was not wearing gloves. J.B. stated that he and R.R. saw the subject enter the store, walk to the back of the store and quickly exit the store heading north on 56th Street. J.B. stated that both he and R.R. took note because they thought it was odd that the subject came and left so quickly.

15.     J.B. stated that R.R. left at approximately 5:30 p.m. and she headed north on N. 56th Street. J.B. Stated that approximately two minutes later, the same subject entered the store again and approached J.B., who was at the cash register watching the TV monitor that played various advertisements for upcoming games. J.B. stated that he heard the subject say to him "I'm going to need that register money". J.B. thought he was joking and turned to face the subject who

repeated the demand and brandished a small rifle, partially concealed, under his jacket. J.B. stated that he started to open the cash register when the subject instructed him to the back storage room. In the storage room, the subject grabbed a preowned PS5 Slim Physical (SN: E43501VKK10618396) valued at $450 along with a S5 white controller valued at $75, and then led J.B. back out into the main area of the store. J.B. stated that the subject told J.B. "I don't want to hurt you." J.B. stated that he opened both registers and the subject reached into the register drawers and removed approximately $750 in U.S. currency, plus an unknown amount of quarters, placing the money into his jacket pockets. J.B. stated that he handed a white GameStop plastic bag to the subject and the subject placed the PlayStation console and controller inside of it and then walked out the store, heading Northbound on N 56th Street.

16. Video surveillance from the GameStop was recovered by law enforcement. A review of the footage corroborates the incident account provided by J.B., including the subject entering the GameStop originally, and leaving, prior to returning, shortly thereafter, and approaching J.B. with his right arm holding what appeared to be the firearm described by J.B.

**Armed Robbery of the GameStop located at 3141 N. 56th Street, Milwaukee, Wisconsin – April 18, 2025**

17. On April 13, 2025, at approximately 11:04 a.m., an armed robbery occurred at the GameStop located at 3141 N. 56th Street, Milwaukee, Wisconsin. The victim, hereinafter R.R., stated that just after opening at 11:00 AM, two unknown black male subjects entered the business. R.R. stated the Subject 1 approached her and retrieved a small rifle from under his coat. R.R. stated that Subject 1 did not point the firearm directly at her and stated that he would not hurt her but wanted the money from the register and from the safe. R.R. stated that she opened the register, and the subject took the money out, totaling $200. R.R. stated that she then entered the code to the safe, which was on a 10-minute delay. After 10 minutes, the safe was opened and the

subject obtained $1500. R.R. stated that while she was dealing with Subject 1 with the firearm, Subject 2 went to the back of the store and placed five Sony PlayStation 5's into a cardboard box and carried them to the front of the store and eventually outside. R.R. stated that subject 2 also placed multiple Sony PlayStation controllers and placed them into the box as well. R.R. described Subject 1 as a black male, 30's, 5'10, 150lbs thin build, dark complexion, wearing a black face mask, black hooded sweatshirt with the hood up, black jacket with white piping, black pants, white with black web style trim, armed with a large firearm resembling a micro-Draco with wooden handgrip. R.R. described Subject 2 as a black male, 5'9, 20 years old, 180lbs, medium build, light complexion, wearing black ski mask, red hooded sweatshirt, blue jeans.

18.     Surveillance video from the GameStop was obtained by law enforcement and corroborated R.R.'s statements regarding the incidents that occurred inside the GameStop.

19.     On Tuesday April 15, 2025, Officers obtained video from a business to the north of GameStop. The video shows Suspect 1 loading items from the GameStop into the passenger side of a black Nissan Rogue. Once the items are inside the Rogue, Suspect 1 gets into the front passenger seat, and the Nissan Rogue speeds off southbound on N. 56th Street. The video shows that the front and rear rims on the passenger side of the Rogue are a different style. The rear plate has a tinted registration plate cover, and the rear windshield wiper was faded or weather damaged at the tip.

20.     A review of Flock images in the area of the robbery on April 13, 2025, officers were able to identify the suspect vehicle based the unique features (mis-match rims, tinted plate cover, and weather damaged rear wiper blade) as 2015 black Nissan Rogue bearing WI plates of AZA5041, registered to RAYSHON Q SYKES (dob: XX/XX/99).

21.     A review of SYKES within open source and law enforcement databases revealed that SYKES was a named suspect for a felony theft on November 3, 2024, at the Dollar General located at 627 W Historic Mitchell Street. In that investigation, SYKES was an employee at that Dollar General, and was captured on surveillance video, stealing money from the safe and two cash registers. On November 3, 2024, SYKES was observed wearing the same style and color shoes as Suspect 1 when the armed robbery of the GameStop is being committed on April 13, 2025. SYKES was also listed as being 5'11" and weighing 140 pounds which matches the physical description of the subject seen in surveillance video on both April 8, 2025, and April 13, 2025.

22.     Also on April 15, 2025, at 1:05 p.m., Officers from the Milwaukee Police Department were dispatched to the GameStop located at 4131 N. 56th Street, Milwaukee for additional information and follow-up. On scene, officers spoke with the store manager, hereinafter D.J. who stated that he believed that Subject 1 in the armed robbery of the GameStop on April 8, 2025, and April 13, 2025, may be the same subject from a phone theft incident that had occurred on Sunday, March 23, 2025, at approximately 3:25 p.m. D.J. stated that the subject in that theft was wearing the same shoes as Subject 1 and had similar mannerisms when he compared the video from the incidents. D.J. stated that this subject was identified by his driver's license during the phone theft as RAYSHON SYKES which SYKES had provided to the employee prior to stealing the phone.

**Arrest of RAYSHON SYKES and search warrant execution at 8115 West Hampton Avenue**

23.     On Wednesday, April 16, 2025, at approximately 8:00 AM, members of the Milwaukee Police Department Special Investigation Division (SID) conducted an investigation at 8115 West Hampton Avenue, which is located within the City and County of Milwaukee. Police Officer Matthew BROOKS, who was working in an undercover capacity, observed a Black Nissan

Rogue bearing Wisconsin Registration Plate #AZA5041, which was wanted regarding the above listed armed robbery investigations. The Nissan was parked in a rear parking slab parallel to 8115 West Hampton Avenue. The investigation was conducted with the intent to recover the Nissan Rogue as well as apprehend the registered owner, SYKES. At approximately 9:40 AM, SYKES was observed exiting from the rear of 8115 West Hampton Avenue and entered the driver's seat of the Nissan. MPD SID approached SYKES on foot and arrested SYKES without incident. A search incident to arrest revealed a loaded tan Glock semi-automatic firearm (SN: CEEX086), which was concealed from ordinary view in SYKES front waistband within his underwear, and an Apple iPhone 15 Pro Max. Officers were aware that SYKES did not possess a carry conceal weapon permit to possess a concealed weapon/firearm which was confirmed through a check through NCIC prior to the course of this investigation.

24.     On April 16, 2025, a Wisconsin state search warrant was obtained and executed at 8115 W Hampton Ave, #4, which is the apartment SYKES identified as the location where he was staying. Milwaukee Police Detectives recovered three Sony Play Station 5 consoles, which were still in the box, thirteen preowned video game controllers in GameStop packaging, fifteen brand new video game controllers inside their original packaging, as well as a Micro Draco style firearm matching the physical description of the GameStop armed robberies that took place on April 8th and April 13th, along with six additional firearms.

25.     On April 17, 2025, I, along with Milwaukee Police Detective and FBI Task Force Detective Brendan Dolan, conducted a *Mirandized* custodial interview of SYKES and he admitted to committing the theft of $12,425.05 from November 3, 2024, and identified himself in surveillance footage. SYKES also identified himself as well as his vehicle (Rogue) in a still frame footage from the armed robbery of the Dollar General on December 23, 2025, and admitted to

committing that robbery. SYKES identified the suspect vehicle as his vehicle and stated he spent the money taken from the robbery on Christmas presents for his family. In addition, SYKES admitted to conducting the GameStop armed robbery that occurred on April 8, 2025, as well as the GameStop armed robbery that occurred on April 13, 2025, and that the suspect vehicle used in the armed robbery was the Nissan Rogue registered to him. SYKES also identified his phone number as **414-628-1540** (**Target Cell Phone 1**) and verified that he had this cell number during the December 23, 2025, armed robbery of the Dollar General as well as during the armed robberies of the GameStop on both April 8, 2025, and April 13, 2025.

26.     Also on April 17, 2025, a Wisconsin state search warrant was obtained by MPD Detective Michael Martin for the Apple iPhone 15 Max Pro SYKES had on his person when he was taken into custody on April 16, 2025, and a red Apple iPhone in a black protective case, located during the execution of the search warrant at SYKES's residence at 8115 W. Hampton Avenue, Apartment #4. On April 23, 2025, Detective Martin identified the cellular telephone number of both cellular telephones, however, the number of the Apple iPhone 15 Max Pro that was located on SYKES's person had an assigned cellular telephone number of **414-788-1366** (**Target Cell Phone 2**). Also on April 23, 2025, utilizing open-source database systems, I searched the Target Cell Phone 2 and results identified the subscriber as RAYSHON QUINTELL SYKES.

27.     Your affiant is requesting the subscriber information, call detail records, text message connection records, text message content information, specialized location records, cloud storage records for telephone number, and Timing Advance for the **Target Cell Phones,** for the timeframe of December 1, 2024 beginning at 12:00 am CST, through April 16, 2025, at 11:59 pm CST.

(edit SCD)

## IV. CELL SITE DATA

28.    In my training and experience, I have learned that the Service Provider is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records."  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

29.    Based on my training and experience, I know Service Providers can collect cell-site data about the **Target Cell Phones**.  I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular phone to which they provide service in their normal course of business in order to use this information for various business-related purposes.

30.    Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number)

provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **Target Cell Phones** user or users and may assist in the identification of co-conspirators and/or victims.

## V.    AUTHORIZATION REQUEST

31.    Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

32.    I further request that the Court direct Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## **ATTACHMENT A**

### **Property to Be Searched**

Records and information associated with the cellular telephone assigned call number **414-628-1540** and **414-788-1366** (referred to in attachment B as "the Accounts"), that is stored at the premises controlled by T-Mobile, a cellular service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey, 07054.

**ATTACHMENT B**

**Particular Things to be Seized**

**I.    Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Accounts listed in Attachment A for the following dates: December 1, 2024, 12:00 am CST, through April 16, 2025, 11:59 pm CST:

    A.    The following information about the customers or subscribers of the Accounts:

        1.    Names (including subscriber names, user names, and screen names);

        2.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        3.    Local and long-distance telephone connection records;

        4.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        5.    Length of service (including start date) and types of service utilized;

        6.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        7.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

        8.    Means and source of payment for such service (including any credit card or bank account number) and billing records.

B.    All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      1.    the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

      2.    information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received, as well as per-call measurement data.

      3.    per call measurement and timing advance data (PCMD, RTT, True Call, NELOS, or similar)

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 18 U.S.C. § 1951(a), Hobbs Act Robbery, and Title 18 U.S.C. § 924(c), Brandishing of a Firearm during a Crime of Violence, involving SYKES, during the period of December 1, 2024, 12:00 am CST, through April 16, 2025, 11:59 pm CST.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider to locate the things particularly described in this Warrant.